**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**ELISHA HUNTER,**
**individually and as Personal Representative**
**of the Estate of Stanley Bell, deceased,**

      **Plaintiff,**

**v.**

**HETAL AMIN, M.D.,**
**MEARL JUSTUS, individually and in**
**his official capacity as Sheriff of St. Clair County, Illinois;**
**ST. CLAIR COUNTY, ILLINOIS;**
**JOHN DOE, individually and in his official capacity**
**as a corrections officer, nurse and employee of St. Clair**
**County, Illinois; and**
**JANE DOE, individually and in her official capacity**
**as a corrections officer, nurse and employee of**
**St. Clair County, Illinois;**

      **Defendants.**                  **Case No. 07-cv-296-DRH**

## MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

## I.  INTRODUCTION

Pending before the Court are two Motions for Summary Judgment.  The first Motion is filed on behalf of defendants Mearl Justus and St. Clair County, Illinois (Doc. 33), to which Plaintiff has filed her opposing Response (Doc. 37).  The second summary judgment motion is filed on behalf of defendant Hetal Amin, M.D. (Doc. 35), to which Plaintiff has also filed an opposing Response (Doc. 38) and defendant Amin has replied (Doc. 39).  In addition, Plaintiff has filed a Motion for

Oral Argument on Defendants' Motions for Summary Judgment (Doc. 43), which has also been fully briefed by the parties. All three Motions, therefore, are now ripe for determination. Further, although requested by Plaintiff, the Court finds no need for oral argument in this case, as the facts and legal arguments have been briefed by the Parties in a sufficient manner, allowing for the Court to make a ruling herein. For the reasons discussed herein, the Court finds Defendants are entitled to summary judgment.

## II.  BACKGROUND

Plaintiff, Elisha Hunter, brings this action individually and as Personal Representative of the Estate of Stanley Bell ("Bell"), now deceased, against the following defendants: Hetal Amin, M.D., St. Clair County, Illinois (the "County"), Mearl J. Justus, John Doe and Jane Doe (Doc. 3 - Complaint). Plaintiff alleges that Hetal Amin, M.D. ("Dr. Amin") is a physician employed by the County (*Id*. at ¶ 2). Justus is the Sheriff of St. Clair County, Illinois, and is therefore also alleged to be an employee of the County (*Id*. at ¶ 4). John Doe and Jane Doe were also, at the time of the events giving rise to Plaintiff's claims, alleged employees of St. Clair County , serving as either a corrections officer and/or nurse (*Id*. at ¶¶ 5-6).

The uncontested facts of this case show that Bell was housed in St. Clair County Jail as a pretrial detainee, held on federal charges (Doc. 35, p. 2, ¶¶ 8-9). Bell was transferred to St. Clair County Jail on or about April 13, 2005 (*Id*. at ¶ 7). Bell suffered from a mental condition known as bipolar affective disorder (Doc. 3, ¶ 9). At the time, Bell was taking Prozac for his condition (Doc. 35, p. 2, ¶¶ 7, 33,

38).  Dr. Amin is a licensed psychiatrist, who was, at the time of the events giving rise to this suit, working for Wexford Health Sources, Inc. (*Id*. at ¶¶ 2-5).  Wexford was under contract with the County to provide psychiatric services to St. Clair County Jail inmates.  Therefore, pursuant to this contract, Dr. Amin would provide these services for two hours a week (*Id*. at 6).  Dr. Amin met with Bell on April 21, 2005, in order to conduct a psychiatric examination (*Id*. at ¶¶ 18, 20).  It was standard procedure at St. Clair County Jail to have a correctional officer present during any type of medical examination/evaluation of an inmate (*Id*. at ¶¶ 20-21).

During this examination, Bell objected to the correctional officer's presence, claiming that he had a right to communicate confidentially with Dr. Amin (*Id*. at ¶¶ 20-23; Doc. 37, p. 2).  The correctional officer would not leave the room. Bell grew increasingly belligerent, refusing to participate in the examination until the correctional officer left the room (*Id*. at ¶¶23, 27-28).  Along with refusing to participate, Defendant also refused to sign the "refusal of treatment" form, which he instead crumpled up and threw away (*Id*. at ¶¶ 29-30).  Dr. Amin believed the best course of action was to discontinue the antidepressant Bell had been prescribed, believing that it may aid him in "coming down" from the manic episode he seemed to be experiencing that day (*Id*. at ¶¶ 31-32; Doc. 3, ¶ 11).  Further, Dr. Amin planned on following up on Bell's condition in a week's time (*Id*. at ¶ 38).  At that time, Bell was not ordered to be placed on suicide watch (Doc. 35, p. 3, ¶ 37; Doc. 3, ¶ 11).  Two days later, on April 23, 2005, Bell committed suicide (Doc. 3, ¶ 17).

Plaintiff's suit on behalf of her brother's estate alleges three counts: Count I alleges a state law claim of medical malpractice resulting in Bell's lost chance of survival or recovery, brought against Dr. Amin and the County; Count II alleges a claim of medical malpractice resulting in Bell's wrongful death, brought against Dr. Amin and the County; Count III alleges a § 1983 claim against all Defendants in this case for their deliberate indifference to his serious medical needs, in violation of his constitutional rights (Doc. 3).[1]

### III. SUMMARY JUDGMENT

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c)**; *Oats v. Discovery Zone*, **116 F.3d 1161, 1165 (7th Cir. 1997) (citing** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986))**. The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Ins. Co.*, **123 F.3d 456, 461 (7th Cir. 1997) (citing** *Celotex*, **477 U.S. at 323)**. In reviewing a summary judgment motion, this Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. *Celex Group, Inc. v. Executive Gallery, Inc.*, **877 F. Supp. 1114, 1124 (N.D. Ill. 1995)**. This Court must consider the entire record, drawing reasonable

---

[1] In a previous Order (Doc. 32), the Court granted in part defendant Justus and the County's Motion to Dismiss (Doc. 4), largely uncontested by Plaintiff, and dismissed with prejudice Counts I & II against Justice.

inferences and resolving factual disputes in favor of the nonmovant. ***Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986))**.

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations in his pleadings; rather, he must show through specific evidence that an issue of fact remains on matters for which he bears the burden of proof at trial. ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**. No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**. "[Nonmovant's] own uncorroborated testimony is insufficient to defeat a motion for summary judgment." ***Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 939 (7th Cir. 1997)**. Further, the non-moving party's own subjective belief does not create a genuine issue of material fact. ***Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir. 1997)**.

## IV. <u>DISCUSSION</u>

The Court will determine both summary judgment motions in this Order, discussing the parties' relative arguments as to each count in Plaintiff's Complaint.

### A.     **Counts I & II - Medical Malpractice**

Count I is a claim for medical malpractice resulting in Bell's lost chance of survival or recovery, pursuant to Illinois common law.  Count II is a claim for medical malpractice resulting in Bell's wrongful death.  Both counts are brought against Dr. Amin and the County.

#### 1.     **Dr. Amin**

To prove a claim for medical malpractice, a plaintiff must show that (1) the defendant had a duty to provide the patient with a certain standard of care, (2) the defendant negligently breached that standard of care, and (3) the defendant's breach was the proximate cause of the plaintiff's injury.  ***Hooper v. County of Cook*, 851 N.E.2d 663, 669 (Ill. 2006)**.  As to Count I, the injury would be Bell's resulting loss of survival or recovery.  As to Count II, the injury would be Bell's death.  ***See Beetle v. Wal-Mart Assoc.*, Inc., 71 N.E.2d 364, 375 (Ill. App. Ct. 2001)**.

Dr. Amin moves for summary judgment on Counts I and II, arguing that Plaintiff cannot show he owed a duty to provide care to Bell as it was negated by Bell's own refusal of medical treatment (Doc. 35, pp. 9-11).  The physician-patient relationship creates a duty for the physician to provide competent medical care to the patient.  ***Curtis v. Jaskey*, 759 N.E.2d 962, 967 (Ill. App. Ct. 2001)**.  A

medical malpractice action is predicated on such a duty.  *Id.*  However, where the patient expressly refuses to consent to a medical procedure, no duty arises on behalf of the physician to perform the procedure.  Ergo, the physician cannot be held liable for failing to perform the duty.  *Id.*  Accordingly, Illinois law generally does not allow a physician to "force medical treatment" when that patient exercises his right to refuse treatment.  *Id.* **("Where a patient expressly refuses medical treatment, or the patient's instructions specifically preclude the treatment rendered, treatment contrary to the patient's will constitutes a battery even when an emergency exists.") (citations omitted)**.

In this case, Dr. Amin asserts that Bell expressly refused to allow him to conduct the psychological examination on April 21, 2005 unless Dr. Amin agreed to prohibit the correctional officer to remain present during the examination.  He also refused to sign anything, including the refusal of treatment form (Doc. 35, p. 11 and Ex. 1 - Amin Dep., 24:4-23).  Dr. Amin states that he believed it to be standard procedure of the St. Clair County Jail to require a correctional officer be present at all inmate medical examinations.  Moreover, Dr. Amin testified during his deposition that Bell had a known history of violence and so it was recommended that the correctional officer be present for safety reasons (*Id.*, Amin Dep., 29:16-23).  Additionally, Dr. Amin testified that he did not believe, at the time, Bell was acting suicidal and therefore saw no reason to order that he be placed on suicide watch (*Id.*, Amin Dep., 50:16-25).

Plaintiff contends Dr. Amin's assertions, claiming that Bell signed a

consent to mental health treatment form at the start of the examination (*see* Doc. 35, Ex. 1 - Amin Dep., 34: 5-18; 35:8-22 & Ex. 1, p. 11 - Mental Health Treatment Plan form). Thus, Plaintiff attempts to clarify that Bell did not actually refuse *treatment*, he simply refused to speak to Dr. Amin if their communication would not be confidential (Doc. 38, pp. 2-3). Plaintiff believes this was misconstrued as a total refusal and thus, Bell was denied treatment. Further, Plaintiff argues that Dr. Amin's plan to follow up on Bell's condition a week after the April 21, 2005 failed examination evidences an existing physician-patient relationship (*Id*. at 3).

From the evidence presented, the Court finds that Bell refused treatment. Under Illinois law, his refusal of treatment absolved Dr. Amin from a duty to treat him at that time. To the best of Dr. Amin's knowledge, it was standard procedure of St. Clair County Jail to have a correctional officer present during every inmate medical examination. In other words, Dr. Amin stated that was unaware of any way to provide Bell with the confidential communication he sought. Further, Dr. Amin testified that because Bell refused treatment, he could no longer prescribe the medications Bell had been taking or any new medications. Aside from Plaintiff's argument that Bell was denied his right to communicate with Dr. Amin in confidence, Plaintiff offers no evidence to contest Dr. Amin's assertion that Bell refused treatment on April 21, 2005. Accordingly, the Court agrees with Dr. Amin: due to Bell's refusal of treatment on April 21, 2005, Dr. Amin had no duty to provide Bell with treatment that day. Therefore, Plaintiff cannot establish the requisite elements of a medical malpractice claim. Dr. Amin is thereby entitled to summary judgment on Plaintiff's

medical malpractice claims in Counts I and II.

## 2. The County

The County's position is that as Plaintiff does not allege the County engaged in negligent activity and therefore, Plaintiff only seeks to hold it vicariously liable for Dr. Amin's alleged medical negligence. The County further asserts that there can be no vicarious liability, as the facts show that it was not Dr. Amin's employer (Doc. 34). Contrary to Plaintiff's allegations, Dr. Amin was actually employed by Wexford Health Sources, Inc. (Doc. 34, Ex. 2 - Amin Dep., 8:1-18). Wexford, in turn, contracted with the County to provide certain medical services to St. Clair County Jail (*Id.*). In Illinois, absent an employer-employee relationship, there can be no vicarious liability imposed under the doctrine of *respondeat superior*. ***See, e.g., Moy v. County of Cook*, 640 N.E.2d 926, 927-28 (Ill. 1994)**. Plaintiff has not addressed the County's argument in her opposing Response. Thus, she has not offered up any evidence to contest Defendant's showing that Dr. Amin was not an employee of the County at the time of the incident, nor has Plaintiff argued other theories of agency law which might serve to find the County vicariously liable for Dr. Amin's actions. As such, the Court finds the County is entitled to summary judgment on Counts I and II.

## B. Count III - § 1983

Count III alleges a § 1983 claim against all Defendants in this case for their deliberate indifference to Bell's serious medical needs, in violation of his constitutional rights. Plaintiff alleges that on April 21, 2005, Bell suffered from a

mental health condition known as bipolar affective disorder. This is undisputed. Plaintiff states Bell's bipolar disorder and his need for mental health medication constituted a "serious medical need" (Doc. 3 - Comp., ¶ 20). Additionally, Plaintiff alleges that Bell also had a serious need for suicide watch precautions (*Id.*). Plaintiff further alleges that Defendants were aware of Bell's serious medical needs, yet they acted with deliberate indifference to his needs in that they failed to provide the necessary medical care to treat Bell's mental condition and failed to place him on suicide watch (*Id.* at ¶ 22). According to Plaintiff, it was also the County's official policy and custom to delegate its authority to defendants Justus, Dr. Amin, John Doe and Jane Doe, who then had final policy making authority to not provide Bell with medical care and suicide watch precautions (*Id.* at ¶ 23). Defendant Dr. Amin moves for summary judgment, as do defendants Justus and the County.

### 1. Dr. Amin

As Bell was incarcerated as a pretrial detainee, rather than pursuant to a criminal conviction, his § 1983 claim for deliberate indifference to his serious medical needs must be brought pursuant to the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. ***Williams v. Rodriguez,* 509 F.3d 392, 401 (7th Cir. 2007) (citing *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir.2003) ("The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, [Plaintiff] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment."))**.

In **Estelle v. Gamble, 429 U.S. 97 (1976)**, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, imposes a duty upon states to provide adequate medical care to incarcerated individuals. **See id. at 103; see also Walker v. Benjamin, 293 F.3d 1030, 1036-37 (7th Cir. 2002)**. To create a violation by failing to provide medical care, there must be "deliberate indifference" to a substantial risk of harm. **Sherrod v. Lingle, 223 F.3d 605, 610 (7th Cir. 2000) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994))**. This standard erects two high hurdles which every inmate-plaintiff must clear. **Dunigan v. Winnebago County, 165 F.3d 587, 590 (7th Cir. 1999)**. The plaintiff must show: 1) the medical condition was objectively serious; and 2) the state officials acted with deliberate indifference to his medical needs, which is a subjective standard. **Sherrod, 223 F.3d at 610**.

A condition is objectively serious if "failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain." **Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)**. To show deliberate indifference, a plaintiff must establish that the jail official "was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. **Perkins v. Lawson, 312 F.3d 872, 875 (7th Cir. 2002) (citing Wynn v. Southward, 251 F.3d 588 (7th Cir. 2001))**. The Seventh Circuit has stated that deliberate indifference requires a showing of more than mere

negligence (or even gross negligence) but less than purposeful infliction of harm. ***Woodward v. Correctional Medical Services of Illinois, Inc.,* 368 F.3d 917, 926-27 (7th Cir. 2004) (citing *Matos ex rel. Matos v. O'Sullivan,* 335 F.3d 553, 557 (7th Cir. 2003); *Perkins,* 312 F.3d at 875)**.  Furthermore, an inmate is not entitled to demand specific care, nor is he entitled to the best care available.  ***Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997)**.  It follows that an inmate with a violent history is not allowed to dictate the security arrangements of his movements about a jail setting, even if it involves a conversation with a psychiatric provider.  The guard must be present and available to intervene in the event the doctor is about to be the victim of the wrath of the inmate who is disenchanted with the advice or consultation of the doctor.  The inmate's anger in the case at bar demonstrates the efficacy of such a policy.

Dr. Amin moves for summary judgment as to Plaintiff's § 1983 claim, asserting that there is no existing question of material fact about whether he acted with deliberate indifference towards Bell (Doc. 35, pp. 6-9).[2]  First, Dr. Amin asserts that there is no evidence presented that he acted with deliberate indifference (Doc. 35, p. 8).  In other words, Dr. Amin argues Plaintiff cannot show he was either aware that a substantial risk of serious harm existed, intended to mistreat Bell or that his actions essentially constituted the equivalent of criminal recklessness (*Id.* at 7-8).

---

[2]  As an aside, Dr. Amin does not contest the fact that he was "acting under color of state law" while seeing inmates at St. Clair County Jail during the time in question.  He therefore recognizes that this would not be a bar to Plaintiff's claim (*Id.* at 6, citing ***West v. Atkins,* 487 U.S. 42 (1988)**).

In support, he offers Plaintiff's Answer to Interrogatory No. 3. Interrogatory No. 3 asked Plaintiff to "Identify the specific date(s) on which you believe Dr. Amin was deliberately indifferent" (Doc. 35, p. 8 & Ex. 4, p. 2). Her answer stated, "I don't know if Dr. Amin was indifferent" (*Id*.). Second, Dr. Amin argues that at a bare minimum, he is entitled to qualified immunity; if the Court merely requires a showing of negligence to establish a constitutional violation, it would amount to a broadening of Plaintiff's constitutional rights of which Dr. Amin would not have been previously aware (Doc. 35, pp. 8-9).

In response, Plaintiff asserts that Bell had a right pursuant to Illinois law to communicate with Dr. Amin in confidence and thus, outside of the presence of the correctional officer (Doc. 38, p. 1). Plaintiff further states that "Amin refused to accommodate Bell's request for confidential communication because he thought it was the standard procedure of [the County] to have an officer present" (*Id*.). Plaintiff believes that due to Dr. Amin's refusal to accommodate Bell's request, he was unable to conduct Bell's psychiatric examination on April 21, 2005, which constituted inadequate medical treatment. In support, Plaintiff offers the deposition testimony of psychiatrist Jule P. Miller, Jr., M.D., in which he stated that the medical care provided by Dr. Amin to Bell was inadequate or below the requisite standard (Doc. 38, Ex. - Miller Dep., 96:1-5). In short, Dr. Miller opines that Dr. Amin should not have abruptly discontinued Bell's medication and that he should have recognized the possibility that Bell could become suicidal (*Id*. at 107:5-9; 108:20-23). Replying, Dr. Amin opposes the use of Dr. Miller's opinions to substantiate Plaintiff's

allegations that Dr. Amin acted with deliberate indifference or even below the accepted standard of medical care, for that matter (Doc. 39, pp. 3-4). Specifically, Dr. Amin objects to Dr. Miller's deposition testimony and expert opinions, arguing that there is no foundation for these opinions – Dr. Miller has not shown familiarity with either the methods, procedures or treatments typically rendered by physicians working in a correctional facility environment (*Id.*).

The Court agrees with Dr. Amin. Plaintiff has failed to show an existing question of material fact regarding whether Dr. Amin acted with deliberate difference towards Bell. Plaintiff's main contentions – that Dr. Amin acted with deliberate indifference when he discontinued Bell's medications and that he failed to subsequently place Bell on suicide watch – show negligence, at most. No evidence was presented indicating Dr. Amin disregarded the risk posed by discontinuing Bell's medications. First, evidence shows Bell refused to be evaluated on April 21, 2005, so at that point, Dr. Amin was unable to administer a treatment plan without Bell's consent or prescribe new medications. Second, Dr. Amin believed discontinuing the anti-depressant prescribed to Bell would have aided in treating his bipolar disorder.

During his deposition, Dr. Amin said that he discontinued Bell's medications (specifically, Prozac) because it was recommended by the American Psychiatric Association ("APA") Guidelines:[3]

---

[3] In these deposition testimony excerpts, because the Court is omitting the text of the deposition questions, it has added additional text to some of Dr. Amin's testimony to put it in its proper context, which was originally provided by the question. Also, because Dr. Amin testified that English is his fourth language, some of the grammar remains, understandably so, a bit rudimentary.

[Bell] was diagnosed with bipolar disorder, according to APA guideline, any form of bipolar disorder type 1 or type 2, antidepressant is not recommended. He has to be on mood stabilizer. And if you look at his medication, he was just on antidepressant medication. So I was trying to help him to understand he needs to be on mood stabilizer. And he got angry, upset. That was the whole focus was that he needs to be on mood stabilizer. He didn't want to listen, and he started using the F word, got more agitated and angry. So, at that time our nurse gave him this piece of paper that, are you refusing everything? You don't want to take any form of treatment? And he didn't sign it. Actually, he crumbled it up and threw it away.

***

Most of the patient who [have] bipolar disorder and they are on antidepressant medication, they go towards manic episode. And [Bell] was like that at that point. That's why he was very angry and upset. By stopping those medication, we were trying to help him to bring down little bit so that he can get a little bit more help. So we were using the standard of care at that point by not making him more hypomanic/manic.

***

According to American Psychiatric Association Guideline, in bipolar disorder patient, antidepressant by itself has never been recommended. And [Bell] was on antidepressant medication only. It is always recommended that patient needs to be on mood stabilizer. If the patient is severely depressed, you can use mood stabilizer plus SSRI, like Prozac or any other SSRI. But used SSRI only, because they are very prone to develop manic episode.

***

Number one, [Bell] didn't give us a chance [to develop a treatment plan] based on the standard of treatment guideline, when they cannot sign the consent form and allow us to continue the treatment. Which I told him I didn't have any other choice except stopping the medication. Which I also told him that it is not in your best interest based on American Psych Association Guideline. And, number three, I told him that the best option for you is the mood stabilizer. That was the plan. But he didn't listen. He continued to use the F word.

(Doc. 35, Ex. 1 - Amin Dep., 23:23-24:14; 25:24-26:8; 26:13-22.)

Regarding why he did not attempt to make accommodations to conduct

Bell's psychiatric examination in private, to maintain the confidentiality Bell demanded, Dr. Amin explained it was because of the correctional facility's policy to have a correctional officer present, because of Bell's violent history and because there were no alternative accommodations of which he knew:

> If you look at [Bell's] history since he came from county jail from Missouri, he was disruptive, he was agitated, and he was very angry.
>
> ***
>
> But most of the prison system, officer is always there, everywhere I have gone. And . . . looking at the patient, Mr. Bell's violent history, and looking at he was residing at max cell, it was highly recommended by the officer that you, all the personnel, medical personnel, see him with officer.
>
> ***
>
> [I]n county jail, I haven't seen [a situation where the inmate is entitled to some privacy in his communication with the doctor]. And in most of the prison system I haven't seen that. Because the safety comes first for both physician and for the counselor as well as for the medical personnel.
>
> ***
>
> I don't know whether there is any place or room available in St. Clair County Jail that they have that kind of privacy available for [the inmates]. Because most of the time we see, and medical doctors see their patient in the medical department, which is one room only. So it's a very small area.
>
> ***
>
> There was no alternative place that we have in St. Clair County Jail [to examine to an inmate in private without being concerned for the safety of medical personnel] at that present – at that time.
>
> ***
>
> [I]n that room where we see all the patient, there are so many medications available, there are so many medical equipments available, and that is another reason they don't allow us, or any inmates, to be left alone along with any physician. So that is another reason they said no [to Bell's demand for confidential communication with Dr. Amin]. And he got aggravated and started using the F word and he threw those papers.
>
> ***
>
> In St. Clair County Jail, once again, in the medical department there was no particular area that it [confidential examination with inmate

while maintaining safety of medical personnel] was available. And based on [Bell's] history of violence and aggression, it was not possible.]

(Doc. 35, Ex. 1 - Amin Dep., 26:23-27:1; 29:16-23; 30:13-17; 31:19-25; 32:24-33:1; 35:23-36:6; 46:17-21.)

Dr. Amin also testified that he did not order Bell to be placed on suicide watch because he did not believe Bell was acting suicidal. Dr. Amin also believed Bell was being housed in an maximum security environment where he was observed every 15 minutes:

> But in my understanding, [in the max security side of the jail] it's a private cell where officer check on them every 15 minutes.[4] They are isolated by themselves so that they are not having any other aggressive or violent outbursts and they are kept in a separate room rather than general population where they cannot hurt other people.
>
> ***
>
> Based on [Bell's] agitation, aggression, using F word, irritability, no [I did not think Bell was suicidal on April 21, 2005]. When the information what I received afterwards regarding his rash. And at that time of the evaluation he was calm, cooperative. He was, once again, very content. So at the time he was not suicidal at all.
>
> ***
>
> [Bell] was in max security where he was on 15-minutes check. So he was well secure at that point, too. And he was not having any gesture based on every 15-minutes check, or any other indication [of suicidal behavior]. Otherwise our psychologists are available 24/7, and they go there every – everyday so that they can evaluate the patient. So none of the nursing staff have seen after discontinuation of medication.
>
> ***
>
> For Mr. Bell at that point, in addition to stopping all of his medication, at that moment, since he was in maximum security with 15-minutes check, with his agitation aggression, there was nothing else we can do at that point. And since he didn't have any suicidal

---

[4] Evidence actually indicates the officer check was every 30 minutes in maximum security – not 15 minutes. However, Dr. Amin's subjective belief was that a correctional officer checked on Bell every 15 minutes.

gesture or anything like that, there was no further instruction that anyone can give at that point. So we didn't give any further instruction.

(Doc. 35, Ex. 1 - Amin Dep., 30:2-8; 50:19-25; 51:1-9; 51:14-23.)

The Court finds that Dr. Amin's deposition testimony, combined with Plaintiff's lack of evidence to show otherwise, does not indicate Dr. Amin acted with deliberate indifference towards Bell's serious medical needs by either stopping his medications or failing to order that he be placed on suicide watch. As such, Dr. Amin has not violated Bell's constitutional rights. Accordingly,, Dr. Amin is entitled to summary judgment on Plaintiff's § 1983 claim in Count III.[5]

## 2. The County

Plaintiff brings a § 1983 claim against the County, arguing that it was the County's policies and Justus' actions as a person with policymaking authority for the County, that led to Bell's suicide. Defendants Justus and the County move for summary judgment. First, they argue that Justus cannot be individually liable on

---

[5] In his summary judgment motion, Dr. Amin raises the issue of whether qualified immunity would serve to bar Plaintiff's § 1983 against him. Typically, the doctrine of qualified immunity acts as a protective shield for "government officials against suits arising out of their exercise of discretionary functions 'so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" ***Jones v. Wilhelm*, 425 F.3d 455, 460 (7th Cir. 2005) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987))**. However, officers "who act unreasonably or 'who knowingly violate the law'" are not entitled to use qualified immunity as a defense. ***Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1014 (7th Cir. 2006)(quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991))**. The threshold inquiry is whether Dr. Amin's conduct violated Plaintiff's constitutional rights. ***Saucier v. Katz*, 533 U.S. 194, 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991))**. The next step of the inquiry is to ask whether Plaintiff's constitutional rights were clearly established at the time. ***Id.*** The Seventh Circuit has expressly ruled that in a § 1983 case, where no constitutional violation has occurred, it is unnecessary to consider whether the defendants are entitled to qualified immunity." ***Id.* (citing *Kraushaar v. Flanigan*, 45 F.3d 1040, 1049 (7th Cir. 1995))**. Because this Court has concluded above that there was no constitutional violation, it is thus unnecessary to determine the issue of whether Dr. Amin is entitled to qualified immunity.

Plaintiff's § 1983 claim, as Plaintiff has failed to allege or otherwise show his personal involvement with the incidents at issue (Doc. 34, p. 2, citing ***Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981)**).  Second, they assert that Plaintiff cannot prove either an express policy, widespread custom or a person with final policymaking authority caused a violation of Bell's constitutional rights (*Id*).  In her opposing Response, Plaintiff does not contest Defendants' assertion that she has not alleged a cause of action for individual liability on the part of Justus.  Therefore, the Court focuses only § 1983 liability of the County and of Justus in his official capacity as Sheriff.  Moreover, the Court does not find any allegations regarding individual liability on the part of the unnamed (and unserved) Defendants in this case: John Doe and Jane Doe, who are alleged to be County employees and are only parties to this suit via Count III.  Therefore, the Court *sua sponte* dismisses with prejudice Plaintiff's Count III against John Doe and Jane Doe, in their individual capacities.

In order to show that the County is liable for a § 1983 violation of Plaintiffs' civil rights by establishing an unconstitutional policy or custom, Plaintiffs must demonstrate either:

> (1)   that the County had an express policy that, when enforced, causes a constitutional deprivation;
>
> (2)   that the County had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or
>
> (3)   Plaintiffs' constitutional injury was caused by a person with final policymaking authority.

***McCormick v. The City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)(citing**

***McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995))**.

As stated by the Seventh Circuit, "to maintain a § 1983 claim against a municipality, one must establish the requisite culpability (a 'policy or custom' attributable to municipal policymakers) and the requisite causation (that the policy or custom was the 'moving force' behind the constitutional deprivation)." ***Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002) (citing *Monell v. Dept. of Social Services of City of NY*, 436 U.S. 658, 691-94 (1978))**. Further, to attribute liability to the County, Plaintiffs must show that County policymakers "were 'deliberately indifferent as to [the] known or obvious consequences.'" ***Id.* (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 406-07 (1997))**. In other words, that "'a reasonable policymaker [would] conclude that the plainly obvious consequences' of the [County's] actions would result in the deprivation of a federally protected right." ***Id.* (alteration in original)**. As illustrated by the Seventh Circuit in ***Phelan***:

> [T]he word "widespread" must be taken seriously. It is not enough to demonstrate that policymakers could, or even should, have been aware of the unlawful activity because it occurred more than once. The plaintiff must introduce evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision.

***Phelan v. Cook County*, 463 F.3d 779, 790 (7th Cir. 2006)**.

In her opposing Response, Plaintiff asserts that there were two distinct express policies or customs which denied Bell adequate treatment, thereby causally leading to his suicide: (1) the County had an express policy or widespread custom

that a corrections officer would always be present during medical examinations of inmates; and (2) the County had an express policy or widespread custom that correctional officers would not read all inmate outgoing mail due to a staff shortage (Doc. 37, p. 2). Defendants Justus and the County did not file a Reply.

### a. Correctional Officer Present During Medical Examinations

Plaintiff argues that the County's express policy or widespread custom of requiring that a correctional officer be present at all inmate medical examinations denied Bell his right to a confidential communication with his psychiatrist under Illinois law. To substantiate her grounds, Plaintiff cites to the Illinois statutory provision **735 ILL. COMP. STAT. 5/8-802**, a Ninth Circuit case, ***United States v. Chase*, 340 F.3d 978, 983 (9th Cir. 2003)**, and **FEDERAL RULE OF EVIDENCE 501**. Although not cited specifically in these summary judgment pleadings, in her Motion for Oral Argument, Plaintiff also cites to a section of the Illinois Mental Health and Developmental Disabilities Confidentiality Act, **740 ILL. COMP. STAT. 110/3**, which she believes establishes Bell's right to communicate in confidence with a psychiatrist.

Recalling the facts of the instant case, Bell grew agitated during his psychiatric examination with Dr. Amin on April 21, 2005, because a correctional officer was present. When Bell demanded that the examination be conducted in confidence, outside of the presence of the correctional officer, this was refused by both Dr. Amin as well as County jail personnel, due to the aforementioned County policy or widespread custom. The Court, after examination, finds that none of the legal authorities Plaintiff cites gives Bell the right to communicate with Dr. Amin in

confidence, outside of the presence of the correctional officer.

Plaintiff first cites **735 Ill. Comp. Stat. 5/8-802**, a section from the Illinois evidence code dealing with privileged communications between a physician and patient, which states in pertinent part:

> No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve the patient, except only (1) in trials for homicide when the disclosure relates directly to the fact or immediate circumstances of the homicide, (2) in actions, civil or criminal, against the physician for malpractice, (3) with the expressed consent of the patient, or in case of his or her death or disability, of his or her personal representative or other person authorized to sue for personal injury or of the beneficiary of an insurance policy on his or her life, health, or physical condition.

**735 Ill. Comp. Stat. 5/8-802**.

As is shown by the language of the statute itself, this Illinois evidentiary law only limits the circumstances by which a psychiatrist or other physician can disclose a patient's medical records or related information. It does not, as Plaintiff suggests, establish a right to communicate in confidence with a psychiatrist during an examination. Despite Plaintiff's arguments to the contrary, the Court is unwilling to read the plain language of this Illinois statute so broadly. This statute deals with evidentiary/testimonial privileges, which is a distinct concept from confidentiality.

The Ninth Circuit case Plaintiff cites, **United States v. Chase**, again deals with the concept of "confidentiality" in terms of prohibiting a psychiatrist from disclosing communications with a patient made during treatment. This case does *not*, as Plaintiff believes, establish Bell's right to undergo a psychiatric examination

without a correctional officer present, for the sake of maintaining confidentiality. What it does discuss, however, is which state laws and evidentiary rules would thereafter prohibit Dr. Amin from disclosing anything Bell had communicated to him during that examination. **Chase** also discusses certain exceptional circumstances when a psychiatrist may disclose certain patient communications, otherwise deemed confidential. **340 F.3d at 983-85**.

Plaintiff also cites to **FEDERAL RULE OF EVIDENCE 501**, which is a general rule requiring that privilege shall be determined by common law or state statutory law. **FED. R. EVID. 501**. Again, this rule does not serve to establish Bell's right to a confidential communication with Dr. Amin during his examination.

Lastly, Plaintiff cites Section 3 of the Illinois Mental Health and Developmental Disabilities Confidentiality Act (the "Act"), which reads:

> (a) All records and communications shall be confidential and shall not be disclosed except as provided in this Act.
>
> (b) A therapist is not required to but may, to the extent he determines it necessary and appropriate, keep personal notes regarding a recipient. Such personal notes are the work product and personal property of the therapist and shall not be subject to discovery in any judicial, administrative or legislative proceeding or any proceeding preliminary thereto.
>
> (c) Psychological test material whose disclosure would compromise the objectivity or fairness of the testing process may not be disclosed to anyone including the subject of the test and is not subject to disclosure in any administrative, judicial or legislative proceeding. However, any recipient who has been the subject of the psychological test shall have the right to have all records relating to that test disclosed to any psychologist designated by the recipient. Requests

for such disclosure shall be in writing and shall comply with the requirements of subsection (b) of Section 5 of this Act.

**740 Ill. Comp. Stat. 110/3.**

Once more, Section 3 of the Act restricts the disclosure of communications made by a patient to a therapist, absent certain exceptions. Because these communications are unable to be disclosed in most cases, they are considered "confidential." However, the Court cannot construe the language of Section 3 as a mandate that all patients are entitled to communicate with their psychiatrist without anyone else present in the room, especially given the safety considerations both Dr. Amin and the County face with running a correctional facility and examining inmates with violent histories, such as Bell. As Dr. Amin points out (in his Response to Plaintiff's Motion for Oral Argument), the definition of the term "confidential communication" is illustrative in showing that the Act did not create such a right:

> "Confidential communication" or "communication" means ***any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient***. Communication includes information which indicates that a person is a recipient.

**740 Ill. Comp. Stat. 110/2 (emphasis added).**

While Bell may have had a privilege to keep his communications protected from disclosure in court proceedings or other affairs, the Court finds no legal authority supporting Plaintiff's assertion that Bell had a right to a confidential communication with Dr. Amin during his psychological examination and that the

County's policy requiring a that correctional officer be present violated this right. Therefore, whether requiring a correctional officer be present at all inmate medical examinations was an express policy established by the County, a widespread custom or a decision made by a policymaker, such as Justus, is inconsequential at this point. It did not deprive Bell of adequate medical care. Rather, Bell's own refusal to continue with the examination is what ultimately deprived him of adequate medical care on April 21, 2005.

### b. Examination of Outgoing Mail

Plaintiff also claims that the County's policy or custom of only spot-checking outgoing mail sent by inmates deprived Bell of adequate medical care. Specifically, Plaintiff claims that had the County required all outgoing mail from inmates to be read prior to being sent, correctional officers would have seen the four suicide letters Bell wrote to family members, postmarked April 22, 2005. Had correctional officers been aware of Bell's intentions expressed in these letters, especially given his history of suicide attempts, they could have placed him on suicide watch and may have prevented his suicide (Doc. 37, pp. 3-4). Plaintiff admits that the County did not read all outgoing inmate mail due to a shortage in staff personnel.

The Court finds this claim to be problematic: the link between the County's failure to read Bell's mail and his subsequent suicide are too attenuated to establish the requisite element of proximate cause. In other words, it was not the "moving force" behind Bell's alleged deprivation of adequate medical care. True, had

his letters been read ahead of time, correctional officers may have been put on notice that Bell should be placed on suicide watch. But this should not be the means by which we require correctional facilities to provide adequate medical care to inmates or by which we should measure constitutional deprivations.

For these reasons, the Court finds no § 1983 liability on the part of either the County or Justus in his official capacity, regarding Count III of Plaintiff's Complaint. Summary judgment is therefore proper. Additionally, the Court makes a similar *sua sponte* finding regarding Plaintiff's claims against defendants John Doe and Jane Doe in their official capacity and thereby finds Plaintiff's Count III against these unnamed Defendants in both their individual and official capacities should be dismissed with prejudice.

## C.      Attorneys' Fees

Defendants Justus and the County move for attorneys' fees pursuant to **42 U.S.C. § 1988**, claiming that as prevailing parties on Plaintiff's § 1983 claim, it is within the discretion of the Court to award them reasonable attorneys' fees, arguing Plaintiff "has pursued her claims . . . long after it had become clear that they were without merit" (Doc. 34, p. 3). They further seek attorneys' fees for the defense of Plaintiff's pendent state law claims against them (Counts I and II). In its discretion, the Court does not find an award of attorneys' fees to be appropriate in this case, as there is no real indication that Plaintiff's claims were not merely frivolous, vexatious or brought with the intent to embarrass or otherwise harass Defendants. ***See Mustafa v. City of Chicago*, 442 F.3d 544, 549-50 (7th Cir.**

**2006) (discretionary award of attorneys' fees under § 1988 to the victorious party where a losing party has engaged in frivolous appeals or vexatiously and unreasonably prolonged litigation or whose goal is merely to harass or embarrass the defendant) (citations omitted)**. Merely because Defendants prevailed does not evince otherwise.

## V. <u>CONCLUSION</u>

For the reasons discussed in this Order, the Court **GRANTS** the Motion for Summary Judgment (Doc. 33) filed by defendants Justus and the County, as well as **GRANTS** defendant Dr. Amin's Motion for Summary Judgment (Doc. 35). Summary judgment to be entered in favor of defendants Justus, the County and Dr. Amin as to all Counts in Plaintiff's Complaint. As such, Counts I, II and III should be dismissed with prejudice against defendants Dr. Amin (individually and officially), Mearl Justus (individually and officially) and St. Clair County, Illinois. Plaintiff's claims against unnamed defendants John Doe and Jane Doe (individually and officially) should also be dismissed with prejudice, pursuant to the Court's *sua sponte* findings, as stated herein.

**IT IS SO ORDERED.**

Signed this 17th day of September, 2008.

/s/     *David R Herndon*

**Chief Judge**
**United States District Court**